**UNITED STATES DISTRICT COURT**
**THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| QUINCY THORPE., <br><br> Plaintiff, <br><br> -against- <br><br> DELTA AIR LINES, INC., <br><br> Defendants. | Civil Action No.: 1:24-cv-01089 <br><br> **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

QUINCY THORPE ("Plaintiff" or "Mr. Thorpe"), by and through his attorneys, Turturro Law P.C., complains of the defendant Delta Air Lines, Inc. ("Delta"), and alleges, upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

## PARTIES

1. At all times hereinafter mentioned, Plaintiff was and still is a resident of the State of New York, County of Kings.

2. At all times relevant hereto, defendant Delta, was and still is a foreign corporation duly formed and existing under the law of the State of Delaware, which has its principal executive offices in Atlanta, Georgia.

## JURISDICTION AND VENUE

3. The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy, exclusive of interests and costs, exceeds $75,000. There is complete diversity of citizenship.

4. The Court has personal jurisdiction over defendant because it conducts a substantial

portion of its business in the state of New York.

5. Venue is proper in this District because this is the District where Plaintiff resides and because a substantial part of the unlawful acts giving rise to these claims occurred in this District.

## FACTS

### i. *The Unblemished Delta Employee*

6. Plaintiff was hired by Defendant ("Delta") as a ground services employee in 1998. In this capacity he dutifully worked for Delta at its John F. Kennedy International Airport location ("JFK").

7. Mr. Thorpe's duties included, *inter alia*, scanning passenger and commercial baggage and cargo, loading and unloading baggage from airplanes, and related tasks.

8. Over the course of his near twenty plus years with Delta, Mr. Thorpe remained an exemplary employee – never once disciplined for violating Delta's code of conduct, procedures, or policies.

### ii. *An Injury On The Job Leads To Medical Leave*

9. On the morning of September 24, 2019, while he was lawfully working his normal shift at JFK in the vicinity of Gate C-70, Mr. Thorpe started to experience pain and discomfort in his shoulder after lifting a heavy electrical wheelchair with a co-worker.

10. Instead of leaving his shift early, he decided to work through the discomfort and left work at the end of his shift.

11. The following day, on September 25, 2019, Mr. Thorpe arrived at work for yet another normal shift; however, after about four hours of work, he could no longer stand the pain from the prior day's work-related injury and decided to inform a Delta

manager/supervisor who directed him to fill out documents pertaining to his injury. Thereafter, Mr. Thorpe was excused and went home early on out on disability.

12. After leaving work on September 25, 2019, Mr. Thorpe sought out the services of a medical doctor who determined that he was suffering from, *inter alia*, a rotator cuff injury; and, as a result of this diagnosis, the treating physician recommended Mr. Thorpe be placed on medical leave, which Delta thereafter authorized.

13. Accordingly, as of September 25, 2019, Mr. Thorpe was excused by Delta and out on disability/medical leave for a work-related injury that occurred on September 24, 2019.

### iii. *A High-Profile "Heist", Delta's Reckless Accusations, And The Grievous Harm Inflicted On Mr. Thorpe*

14. The very next day, while out on approved medical/disability leave, to Mr. Thorpe's shock, he was intensely approached, harassed, interrogated, and arrested by agents of the Federal Bureau of Investigation ("FBI") and taken into their custody whereafter he was informed of Indictment # CR 19-492 which was filed against him.

15. Years after this federal criminal case proceeded against him, Mr. Thorpe eventually came to learn that the case against him was based on false and misleading information transmitted by Delta employees/agents to the FBI and/or U.S. Attorney's Office for the Eastern District of New York ("EDNY") with the objective of making him the scapegoat for a high-profile[1] "heist" of hundreds of thousands of dollars of cash stored in

---

[1] *See, e.g., Delta baggage handler accused of stealing $250,000 in cash at JFK International Airport,* which was published by the AP on September 27, 2019 https://www.usatoday.com/story/travel/news/2019/09/27/delta-air-lines-baggage-handler-accused-stealing-250-000/3784967002/ (last visited February 27, 2024) (accusing Plaintiff of stealing a bag containing approximately $258,000 in cash as part of a set of eight bags of both U.S. and foreign currency which were delivered to JFK by armored car and to be loaded onto a Miami-bound Delta flight; and citing Delta "working directly with authorities in their investigation")

supposedly secure baggage that took place at JFK.

16. In other words, someone had to be the fall guy for the missing $250,000 in cash, which was, upon information and belief entrusted to Delta's custody and control at JFK on or around September 24, 2019, and regardless of Delta's own investigation revealing information to the contrary, Delta felt content in pointing the finger at its disabled, dutiful employee (i.e, Plaintiff) and ensuring that the evidence supplied to the prosecutors made him the patsy.

17. And so, Delta, with knowledge of the falsity of the accusation[2], maliciously and recklessly helped initiated and assist the EDNY prosecutors in their prosecution of Mr. Thorpe for nearly four years.

18. During that time, upon information and belief, Delta employees/agents provided false or misleading sworn statements/information to the FBI and the EDNY, and, at times, materially omitted other pertinent information, all of which were material in securing the indictment against Plaintiff and in furtherance of the continued malicious prosecution of the Plaintiff. This included, upon information and belief, providing incomplete surveillance footage; providing false or misleading information about the custody and possession of certain baggage scanners that were used at the ostensible crime scene; misrepresenting its policies concerning the handling of baggage as well as loading and unloading baggage from airplanes;  providing false or misleading information concerning the employment status and/or employment record of Plaintiff; failing to disclose

---

[2] Upon information and belief, Delta conducted their own internal investigation which concluded that Mr. Thorpe was innocent of what he was being accused of. Yet, upon information and belief, they withheld the findings of this investigation to achieve their ostensible objective of having Plaintiff be the public scapegoat for their own negligence.

plaintiff's medical/disability leave; and providing misleading or false corroborating declarations, affidavits or other statements, which misrepresented plaintiff's involvement in the illicit activities.

19. Ultimately, after a very short deliberation by the jury at the conclusion of Mr. Thorpe's federal criminal trial, he wass formally acquitted of all charges on September 18, 2023.

20. Nonetheless, the grievous and irreparable reputational, economic, and psychological harm caused to Mr. Thorpe by Delta's wanton and reckless conduct was done.

21. Indeed, during his near four-year fight to clear his name, Mr. Thorpe was deprived of his annual salary and benefits from Delta; remained unemployable; lost economic opportunities; had his freedom restrained; was unable to travel abroad, and, *inter alia*, became the subject of widespread public ridicule.

22. As evidenced by countless published articles in the most prominent publications, Mr. Thorpe's name and face were plastered as the "scapegoat" for Delta's own negligence, in print and on the internet, shared again and again by numerous news outlets.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

23. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

24. Upon information and belief, Plaintiff's employment was covered by an employment/union agreement and/or work-related policies which required a for "cause" basis to suspend and/or terminate an employee.

25. Nonetheless, as alleged herein, based on Delta's reckless and false accusations and desire to find a scapegoat for the missing baggage which containing several hundred thousand

dollars, Delta wrongfully suspended Mr. Thorpe while he was out on approved medical leave and thereafter unlawfully terminated him in violation of its agreements and policies.

26. In doing so, upon information and belief, Delta breached the terms of these agreements and/or policies and deprived Plaintiff of his annual salary/wages and accompanying benefits (e.g., retirement credits/ benefits) for the years 2019-2023.

27. Accordingly, Plaintiff seek compensatory damages in an amount to be determined at trial, but estimated to be well in excess of $75,000.00.

## SECOND CAUSE OF ACTION

### (Malicious Prosecution under New York law )

28. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

29. As alleged in the Facts, Plaintiff was arrested on or around September 26, 2019, indicted, and from that time until the end of his criminal prosecution on or about September 18, 2023, Defendant and/or its agents deliberately and maliciously initiated and materially assisted in the criminal prosecution of the Plaintiff, an innocent man, without any probable cause whatsoever, for the improper purpose and/or objective of creating a scapegoat for Defendant's embarrassing and well-publicized mishandling of the secure transport of several bags full of hundreds of thousands of dollars in cash from New York to Miami.

30. As alleged in the Facts, the Defendant failed to take reasonable steps to stop the prosecution of the Plaintiff and, instead, maliciously and deliberately provided false and/or incomplete information to the FBI and U.S. Attorney's office to induce prosecution of the Plaintiff.

31. The commencement of these criminal proceedings was malicious, began in malice and without probable cause.

32. And this prosecution was ultimately terminated in Plaintiff's favor on or about September 18, 2023 when a unanimous jury returned an acquittal on all charges brought against Plaintiff.

33. As a result of the malicious prosecution, Plaintiff was deprived of his liberty and suffered humiliation, mental anguish, indignity and frustration of an unjust criminal prosecution, all while the Plaintiff was forced to expend substantial resource and make multiple court appearances to defend his liberty as a result of the unjust prosecution.

34. Based on the foregoing, Defendant is liable to Plaintiff for maliciously prosecuting him under New York law ; and, Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial, but estimated to be well in excess of $75,000.00.

### THIRD CAUSE OF ACTION

### (Abuse of Process under New York law )

35. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

36. As alleged in the Facts, Plaintiff was arrested on or around September 26, 2019, indicted and from that time until the end of his criminal prosecution on or about September 18, 2023, Defendant and/or its agents deliberately and maliciously initiated and materially assisted in the criminal prosecution of the Plaintiff, an innocent man, without any probable cause whatsoever, for the improper objective of creating a scapegoat for Delta's embarrassing and well-publicized mishandling of the secure transport of several bags full of hundreds of thousands of dollars in cash from New York to Miami.

37. As alleged in the Facts, the Defendant failed to take reasonable steps to stop the prosecution of the Plaintiff and, instead, maliciously and deliberately provided false and/or incomplete information to the FBI and U.S. Attorney's office to induce the continued prosecution of the Plaintiff in the hopes that it would achieve its objective of placing blame of the missing baggage of cash on a rogue employee (Plaintiff) as opposed to its own negligence.

38. Based on the foregoing, Defendant is liable to Plaintiff for abuse of process under New York law; and, Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial, but estimated to be well in excess of $75,000.00.

## **DEMAND FOR A JURY TRIAL**

39. Plaintiff demands a trial by jury of all issues and claims in this action.

WHEREFORE, Plaintiff demands judgment against the defendant, on all causes of action, for compensatory and punitive damages in an amount to be proven at trial, together with the costs and disbursements of this action.

Dated: February 28, 2024
      Staten Island, NY

Yours, etc.

**TURTURRO LAW, P.C.**
By: /s/ Natraj S. Bhushan, Esq.
1361 N. Railroad Avenue
Staten Island, NY 10306
Tel: (718) 384-2323
Fax: (718) 384-2555
natraj@turturrolawpc.com
*Attorneys for Plaintiff*