UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

QUINCY THORPE,

                    Plaintiff,

            v.

DELTA AIR LINES, INC.,

                    Defendant.

**MEMORANDUM & ORDER**
24-CV-01089 (HG)

**HECTOR GONZALEZ**, United States District Judge:

In September 2019, during his time as an employee of Defendant Delta Air Lines,

Plaintiff Quincy Thorpe was arrested by the FBI.  *See* ECF No. 11 ¶ 16 (Am. Compl., "AC").  A

grand jury sitting in this District indicted Plaintiff and his then-co-defendant for conspiracy to

steal cargo and for the substantive offense of stealing cargo at John F. Kennedy International

Airport ("JFK").  *See United States v. Thorpe*, No. 19-cr-00492, ECF No. 7 (E.D.N.Y. Oct. 24,

2019) (Criminal Indictment, "Indictment").  I presided over Plaintiff's criminal trial at which a

jury acquitted him of those charges.  *See id.*, ECF No. 88 (Judgment of Acquittal).  Now,

Plaintiff has filed a civil suit against his former employer, Delta, for violation of the federal

Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*  AC ¶¶ 31–37.  Plaintiff

also brings state law claims for breach of contract, malicious prosecution, and abuse of process.

*Id.* ¶¶ 26–30, 38–48.  Delta has moved to dismiss, *see* ECF No. 16-1 (Motion to Dismiss,

"Mot."); ECF No. 18 ("Reply"), which Plaintiff opposes, *see* ECF No. 17 (Opposition, "Opp.").

For the reasons explained below, Delta's motion is granted in full.

**BACKGROUND**

The Court draws the following facts from the AC.  The Court "recite[s] the substance of

the allegations as if they represent[] true facts, with the understanding that these are not findings

of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).[1]

Plaintiff started working at Delta's JFK location in 1997.  AC ¶ 6.  As a ground services employee, his tasks included loading and unloading bags from planes.  *Id.* ¶ 7.  On September 24, 2019, Delta was transporting bags of cash from JFK.  *Id.* ¶¶ 17–18 & n.2[2]; *see also* Opp. at 6.[3]  But one bag did not make it to its Miami destination and the $258,000 in it was missing.  AC ¶ 17 & n.2.  On that same day, Plaintiff injured his shoulder after lifting a heavy electrical wheelchair at JFK.  *Id.* ¶ 9.

When Plaintiff reported to work the next day, September 25, his shoulder injury left him in such pain that he could not complete his shift.  *Id.* ¶ 11.  He informed a Delta supervisor, who directed Plaintiff to complete worker's compensation forms.  *Id.*  He was then "excused, approved for medical leave[,] and went home early . . . out on disability."  *Id.*  Later that day, Plaintiff visited a doctor, who recommended that Plaintiff be placed on medical leave.  *Id.* ¶ 12. Delta authorized that leave.  *Id.*  As of September 25, Plaintiff was already "receiving short-term

---

[1]    Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

[2]    Footnote 2 of the AC cites to an online article.  *See* Associated Press, *Delta Baggage Handler Accused of Stealing $250,000 in Cash at JFK International Airport*, USA Today, https://perma.cc/SS7J-XAZK (Sept. 27, 2019, 12:26 P.M.).  In this posture, the Court may consider this article, which is "incorporated in [the AC] by reference."  *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023); *see Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 503 n.11 (N.D.N.Y. 2020) (on a motion to dismiss, considering videos linked to in the complaint); *Frascatore v. Blake*, 344 F. Supp. 3d 481, 489 (S.D.N.Y. 2018) (considering newspaper article quoted and cited in complaint).  In addition, the Court takes judicial notice of the Indictment, which Plaintiff also refers to, AC ¶ 1, and is a matter of public record.  *See, e.g.*, *Johnson v. City of New York*, No. 23-cv-3018, 2024 WL 3520445, at *2 & nn.10–11 (S.D.N.Y. July 23, 2024) (doing the same).  In this Order, citations to footnote 2 of the AC incorporate the linked article cited therein.

[3]    The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

disability benefit [sic] and worker's compensation benefits." *Id.* ¶ 13.  But the FBI arrested him

on the next day, September 26, on charges related to stealing the missing bag.  *Id.* ¶¶ 16, 17 &

n.2, 39, 46; *see also* Opp. at 6.  Plaintiff alleges that Delta provided "false and misleading

information . . . to the FBI and/or U.S. Attorney's Office for [this District] with the objective of

making him the scapegoat for [this] high-profile 'heist.'"  AC ¶ 17 (footnote omitted); *see also*

*id.* ¶ 21.

On October 22, 2019, Delta's agent sent Plaintiff a letter confirming that he would not

need to report for work through December 27, 2019, and further stated "that this disability time

counted towards [twelve] weeks of time under the [FMLA]."  *Id.* ¶ 14 (emphasis omitted).  Two

days later, on October 24, 2019, the grand jury indicted Plaintiff.  *See* Indictment at 1.  On

December 26, 2019, Delta's agent sent Plaintiff "another letter confirming his approval to be off

work" through January 24, 2020, and providing an "unknown" estimated return-to-work date.

AC ¶ 15.  The second letter also confirmed Plaintiff's eligibility for other disability and related

benefits from Delta.  *Id.*  However, Delta fired Plaintiff on January 8, 2020.  *Id.* ¶ 35.

Plaintiff initiated this action in Kings County Supreme Court on January 10, 2024.  *See*

ECF No. 1-2 at 3–4 (Summons with Notice).  Delta removed the case to this Court on February

12, 2024, properly invoking this Court's diversity jurisdiction.  *See* ECF No. 1 ¶¶ 6–8 (Notice of

Removal).  I directed Plaintiff to file his complaint because he had commenced this action in

state court by serving a summons with notice only, as permitted under New York law.  *See* Feb.

14, 2024, Text Order.  Plaintiff filed his first complaint on February 28, 2024.  *See* ECF No. 5.

Delta then filed a pre-motion conference letter in anticipation of filing a motion to dismiss, *see*

ECF No. 7, which Plaintiff opposed, *see* ECF No. 8.  In his response, Plaintiff also sought leave

to amend the complaint, *see id.* at 3, and the Court informed him that he could amend as of right

under Rule 15(a)(1).  *See* Mar. 26, 2024, Text Order.  On April 9, 2024, Plaintiff filed the AC.

*See* ECF No. 11.  On May 9, 2024, Delta moved to dismiss the AC, *see* ECF No. 16, which

Plaintiff opposed on June 10, 2024, *see* ECF No. 17.  Delta filed its Reply on June 24, 2024.  *See*

ECF No. 18.

## **LEGAL STANDARD**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough

facts to state a claim to relief that is plausible on its face.'"  *Johnson v. Mount Sinai Hosp. Grp.*,

No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be

true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief,

pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain

statement of claim against the defendant so that it has adequate notice of the claims against it.

*Id.* at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation.").  A pleading that only "tenders naked assertions devoid of further factual

enhancement" will not suffice.  *Id.*  To satisfy this standard, the complaint must, at a minimum

"disclose sufficient information to permit the defendant to have a fair understanding of what the

plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Kittay v.*

*Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

**DISCUSSION**

The Court begins its analysis with Plaintiff's sole federal claim under the FMLA and proceeds to the state law claims.

**I.    FMLA**

Plaintiff alleges that Delta acted unlawfully when it fired him while he was on FMLA leave.  AC ¶ 36.  Although not articulated in the AC, Plaintiff states in his Opposition that he is asserting both an FMLA interference and FMLA retaliation claim.  Opp. at 11–12.  Delta now argues that the FMLA claim must be dismissed because it is (1) barred by the statute of limitations and (2) implausible.  I agree with both points.

*A.    Statute of Limitations*

Delta argues that Plaintiff's claim is time-barred.  *See* Mot. at 12–13.  Under the FMLA, "an action may be brought . . . not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  Delta says that Plaintiff's last alleged relevant event was his firing on January 8, 2020, meaning that this claim, which was brought for the first time in the AC on April 9, 2024, is untimely.  *See* Mot. at 13.

Plaintiff does not dispute that the statute of limitations began to run with his firing.  Nor does he dispute that the relevant date for measuring the timeliness of the FMLA claim is the filing of the AC, as only state law claims appeared in the initial complaint.  *See* ECF No. 5 ¶¶ 23–38.[4]  Instead, he asserts that the statute of limitations for the FMLA claim is three years in

---

[4]    Although unchallenged, the Court notes that Delta's analysis on the latter point is correct.  Under Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  "In making this [relation-back] determination, 'the pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the newly alleged claims.'"  *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 192 (S.D.N.Y. 2011) (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir. 2000)).  Here, neither the summons with notice filed in state

this case. Opp. at 12. Undoubtedly, in an FMLA case "brought for a willful violation," an extended three-year statute of limitations is triggered. 29 U.S.C. § 2617(c)(2). However, Plaintiff's argument is puzzling here because even assuming that this lengthier bar applies, the claim would remain untimely, as Plaintiff was fired on January 8, 2020, but did not even initiate this case until 2024.

In any event, I need not assume as much because the three-year bar does not apply here. As the Supreme Court has made clear, there is a "significant distinction between ordinary violations and willful violations," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988), and as Delta rightly observes, Plaintiff points to no facts, in the AC or elsewhere, indicative of willfulness, *see* Reply at 6. All he says is that "Delta knew and/or recklessly disregarded whether its conduct violated the FMLA because it terminated . . . Plaintiff while on extended leave that was afforded to [him]." Opp. at 12. The Court does not accept that legal conclusion as true. *See Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53–54 (2d Cir. 2017) (concluding that

---

court (*see generally Lutzker v. Novo Nordisk Pharms., Inc.*, No. 07-cv-3272, 2008 WL 905040, at *4 (E.D.N.Y. Apr. 2, 2008)) nor the initial complaint gave Delta fair notice of an FMLA claim. Although the initial complaint, drafted by counsel in federal court, contained factual allegations about Plaintiff being out on leave, it did not suggest "discriminatory actions in response to plaintiff's absences and disability leave" or other conduct actionable under the FMLA. *Cf. Kamtaprassad v. Chase Manhattan Corp.*, No. 00-cv-8834, 2001 WL 1662071, at *5 (S.D.N.Y. Dec. 28, 2001). Rather, the thrust of the initial complaint, like the AC, was that Delta sought to frame Plaintiff as the "fall guy" or "scapegoat" for the missing cash. *See* ECF No. 5 ¶¶ 16, 22; AC ¶¶ 18, 25. Accordingly, the FMLA claim does not relate back to the initial complaint. *See Phillips v. LIRR*, No. 13-cv-7317, 2019 WL 1757176, at *8 (E.D.N.Y. Mar. 4, 2019) (finding that FMLA claim did not relate back where "[t]he FMLA was not mentioned in Plaintiff's prior filings," "[P]laintiff did not allege that he had taken a[n] FMLA leave or that he was discriminated against or retaliated against for doing so," and "the crux of Plaintiff's [prior] claims . . . was that he was discriminated against on the basis of race"), *report and recommendation adopted*, 2019 WL 1758079 (E.D.N.Y. Mar. 25, 2019), *aff'd*, 832 F. App'x 99 (2d Cir. 2021). That being said, this point is ultimately academic. As discussed in this Section, even if the FMLA claim did relate back to the filing of the initial complaint on February 28, 2024 (or the commencement of the state court action on January 10, 2024), it would not change the Court's timeliness analysis.

the plaintiff failed to plausibly allege a willful FMLA violation where "[n]either the complaint nor her briefing explain[ed] why any alleged violation . . . would have been 'willful'"). The mere fact that Delta terminated Plaintiff while he was on leave did not in and of itself constitute willful conduct. *See Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 428 (S.D.N.Y. 2004) ("The law is clear that an employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause for the termination."). On the contrary, by the time Delta fired Plaintiff, he had been arrested and indicted by a federal grand jury for crimes directly related to his role at Delta. On those facts, Plaintiff does not plausibly allege that Delta either knew it was violating the FMLA or recklessly disregarded its obligations thereunder by firing him, *see Porter v. N.Y. Univ. Sch. of L.*, 392 F.3d 530, 531–32 (2d Cir. 2004), especially after it had already granted him months of leave, since the "FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *See Mejia v. Roma Cleaning, Inc.*, 751 F. App'x 134, 137 (2d Cir. 2018) (finding no willfulness under the FMLA where the plaintiff, who had been fired while on leave, *inter alia*, "admitted it was possible she was tardy or absent on various days" unrelated to that leave). Accordingly, the three-year statute of limitations does not apply.

Plaintiff also argues that the FMLA claim is timely because "per Governor Cuomo's Executive's [sic] Order, causes of action that arose under New York law that accrued before the tolled period—between March 2020 and November 2020—do not count toward[] the statute of limitations period." Opp. at 12. Oddly, Plaintiff does not cite to the relevant law, but he is referring to Executive Order 202.8, which together with several additional executive orders, created a 228-day tolling period from March 20, 2020, to November 3, 2020. *See generally Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 207 (S.D.N.Y. 2022). Unfortunately for Plaintiff, his own description of the executive orders—as applicable to "causes of action that

arose under New York law"—demonstrates why they are not relevant here. As mentioned, the FMLA provides its own statute of limitations.[5] And "courts . . . have consistently held that the [New York] Executive Orders do not purport to toll, nor could they, the time periods established by federal law." *See Brain v. Execu-Search Grp., LLC*, No. 22-cv-8219, 2024 WL 838085, at *6 (S.D.N.Y. Feb. 28, 2024) (collecting cases). Therefore, no tolling is applicable. Again, it is worth noting that such tolling would also have been inconsequential here. Even in Plaintiff's best scenario in which the three-year period applied *and* he could fully toll 228 days, the pleading of the FMLA claim (or even the initiation of this case) would still have come after the expiration of the limitations period, which started to run on January 8, 2020. The Court therefore dismisses the FMLA claim with prejudice.

### B.    Plausibility

Notwithstanding the expired statute of limitations, the Court would also dismiss an FMLA interference or retaliation claim on the merits. "[T]o prevail on a claim of interference with h[is] FMLA rights, a plaintiff must establish: 1) that []he is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that []he was entitled to take leave under the FMLA; 4) that []he gave notice to the defendant of h[is] intention to take leave; and 5) that []he was denied benefits to which []he was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). Delta attacks this claim on various bases[6], *see* Mot. at 14–15, but the most relevant here is that Plaintiff fails to plausibly

---

[5]    This case is therefore also distinct from one in which the federal statute borrows its statute of limitations from state law. *See, e.g.*, *Doe*, 617 F. Supp. 3d at 207–08 (applying the executive orders to a federal Title IX claim, which borrows from state law).

[6]    Based on the AC, and drawing all inferences in Plaintiff's favor, the Court cannot resolve in this posture when Plaintiff's FMLA leave began to run and therefore, whether he had used up all his leave benefits under the FMLA at the point when he was fired and whether he was capable of returning to his job at the end of the FMLA leave. *Compare* AC ¶ 13 (alleging that approved

plead that the leave had anything to do with his firing, which implicates the fifth element of the claim. *See id.* That argument is persuasive. Plaintiff responds that his "FMLA-protected leave was active at the time of his suspension and ensuing termination," *see* Opp. at 12, but even if true, that misapprehends the law.[7] Again, "[t]he FMLA is not a shield to protect employees from legitimate disciplinary action by their employers." *Mejia*, 751 F. App'x at 137. Thus, as already discussed, "[t]he fact that plaintiff was notified of h[is] termination during h[is] leave," standing alone, "does not constitute interference." *Geromanos*, 322 F. Supp. 2d at 428. Indeed, "it is well-settled that an employer is not liable for interfering with an employee's leave when the employee would have been terminated regardless of leave." *Marshall*, 2024 WL 665200, at *7. Accordingly, the Court must reject Plaintiff's strict liability construction of the FMLA, and absent any other indication[8] that Delta "attempted to discourage or otherwise restrain [Plaintiff]

---

"medical leave" began on September 25, 2019, *with id.* ¶¶ 14, 34 (suggesting that "FMLA leave" began on October 22, 2019).

[7]    This type of claim appears to be cognizable as an FMLA interference (as opposed to retaliation) claim only because, construing the allegations in the light most favorable to him, Plaintiff alleges that he was still on FMLA leave at the time he was fired and with more leave available to him. *See* AC ¶¶ 15, 35–36. In that sense, "Plaintiff pleads actual interference with h[is] FMLA entitlements" because he was granted leave but terminated while allegedly entitled to more leave. *See Marshall v. Westchester Med. Ctr. Health Network*, No. 22-cv-7990, 2024 WL 665200, at *7 (S.D.N.Y. Feb. 16, 2024) (distinguishing this scenario from instances of "a retaliation theory in disguise" where "the plaintiff failed to allege she was entitled to any other benefits prior to her termination or that she intended to take leave after her termination"). I assume that Plaintiff was indeed on FMLA leave at the time of his termination for the purpose of the interference analysis.

[8]    In another part of the AC, Plaintiff also alleges that Delta "suspended" him while he was on leave. AC ¶ 28. He provides no additional factual support for that allegation, and in any case, even if I were to construe it as forming the basis of a potential interference claim (something Plaintiff does not do), it would still not constitute interference because, for the reasons already explained, the FMLA does not shield an employee from legitimate discipline any more than it shields him from legitimate termination, which is to say, not at all.

from exercising h[is] rights under the FMLA," *Passante v. Cambium Learning Grp.*, No. 23-cv-4060, 2024 WL 4171026, at *15 (E.D.N.Y. Sept. 12, 2024), his interference claim is dismissed.

It remains unclear how Plaintiff is attempting to assert a retaliation theory on the pled facts. *See* Opp. at 12 (discussing only the interference standard). However, to the extent Plaintiff's claim can be construed as an FMLA retaliation claim, it also fails. *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 167 (2d Cir. 2017) (explaining that "terminations for exercising FMLA rights by, for example, taking legitimate FMLA leave" give rise to "FMLA retaliation claims"). "To establish a *prima facie* case of FMLA retaliation, Plaintiff must establish that: (1) []he exercised rights protected under the FMLA; (2) []he was qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent," *Henderson v. GEICO*, No. 22-cv-03513, 2024 WL 4694011, at *6 (E.D.N.Y. Nov. 6, 2024), under which "but-for" causation is not required, *see Woods*, 864 F.3d at 169. Rather, an employee must adequately plead that the FMLA leave was a "motivating factor" behind the retaliatory conduct. *Passante*, 2024 WL 4171026, at *14.

As mentioned, despite his invocation of a retaliation theory, Plaintiff does not address any of these elements. *See* Opp. at 11–12. And even though his burden in establishing a *prima facie* case is "minimal," *Henderson*, 2024 WL 4694011, at *14, he has failed to adequately plead it under the unique circumstances of this case. *See Geromanos*, 322 F. Supp. 2d at 433–34 (notwithstanding counsel's framing of a wrongful discharge claim as interference-based, analyzing it as a retaliation claim and dismissing it on causation grounds). As it concerns the fourth element of the claim, any theory that his FMLA leave was a motivating factor in his firing is implausible against the backdrop in which he had been arrested by the FBI and indicted by a federal grand jury for crimes directly related to his role at Delta. *See Crosby v. Stew Leonard's*

10

*Yonkers LLC*, 695 F. Supp. 3d 551, 575–76 (S.D.N.Y. 2023) (granting motion to dismiss FMLA

retaliation claim due to lack of causation between taking FMLA leave and termination).

Therefore, any retaliation claim is also dismissed.

## II.    Breach of Contract

Delta moves to dismiss Plaintiff's breach of contract claim, contending that Plaintiff has

failed to plead the existence of an enforceable contract. *See* Mot. at 11–12. To state a claim for

a breach of contract, "a plaintiff usually must allege that: (1) a contract exists[;] . . . (2) plaintiff

performed in accordance with the contract[;] . . . (3) defendant breached its contractual

obligations[;] and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins.

Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022); *accord Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d

131, 142 (2d Cir. 2011). "Critically, a complaint fails to sufficiently plead the existence of a

contract if it does not provide factual allegations regarding, inter alia, the formation of the

contract, the date it took place, and the contract's major terms." *Ebomwonyi v. Sea Shipping

Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020), *aff'd*, No. 20-3344, 2022 WL 274507 (2d Cir.

Jan. 31, 2022). And "[c]onclusory allegations that a contract existed or that it was breached do

not suffice." *Id.* Here, Plaintiff claims that "Delta wrongfully suspended [him] while he was out

on approved medical leave and thereafter unlawfully terminated him in violation of Delta's

policies and New York law" and that "[i]n doing so, upon information and belief, Delta breached

the terms of these policies and deprived [him] of his annual salary/wages and accompanying

benefits (e.g., retirement credits/ benefits [sic]) for the years 2019-2023." AC ¶¶ 28–29.

Delta is correct. The AC plainly fails to identify a contractual obligation, much less a

breached provision thereof. The closest Plaintiff comes is by asserting the following: "Upon

information and belief, given Plaintiff's senior employment status with the Delta [sic] at the,

[sic] his approved medical leave status, and, [sic] the then existing [sic] work-related policies in

11

effect between Delta and its ground employees, Plaintiff's employment could not be terminated 'at will.'" *Id.* ¶ 27.  But that "vague" string of alleged facts does not plausibly suggest the existence of a binding employment agreement.  *See Ebomwonyi*, 473 F. Supp. 3d at 348 (dismissing breach of contract claim where the plaintiff alleged a "promise[]" to be paid but failed to plead any terms of the alleged agreement).  Plaintiff's treatment of Delta's serious argument is cursory at best:  he merely pastes the three above-quoted paragraphs from the AC into his brief and, relying on generalized rules of pleading, says that suffices to plead the existence of a contract.  *See* Opp. at 10.  He errs badly on this point.  For Plaintiff's claim to survive this motion, he must still "nudge h[is] claim across the line from conceivable to plausible" by "rais[ing] a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021).  The mere assertion that an employment agreement existed, supported only by unconnected facts about Plaintiff's employment and conjecture, does not get him across this threshold.

Indeed, in the employment context, "New York courts continue to hold that an employee is presumed to be hired at-will, meaning that the employment can be terminated by either party, at any time, for any or no reason whatsoever, so long as the termination is not effected for a discriminatory reason." *Hunter v. Kaufman Enters., Inc.*, No. 09-cv-5540, 2011 WL 3555809, at *3 (E.D.N.Y. Aug. 8, 2011) (collecting cases).[9]  That presumption may be rebutted, but only where "the employer made its employee aware of an express written policy limiting the right of discharge and the employee detrimentally relied on that policy."  *Id.*  Here, Plaintiff has not even tried to achieve the "difficult" task of pleading such an implied contract.  *Id.* (quoting *Sabetay v.*

---

[9]     Delta observes that Plaintiff was, in fact, an at-will employee. *See* Mot. at 12 n.2.  In resolving this motion, the Court disregards that argument, which goes beyond the pleadings.  *See Lugo v. City of Troy*, 114 F.4th 80, 88 (2d Cir. 2024) (interpreting Fed. R. Civ. P. 12(d)).

*Sterling Drug, Inc.*, 506 N.E.2d 919, 922 (N.Y. 1987)); *see also Stinnett v. Delta Air Lines, Inc.*, No. 18-cv-2704, 2019 WL 1493224, at *11 (E.D.N.Y. Mar. 31, 2019) (dismissing with prejudice breach of contract claim against Delta due to the plaintiff's failure to "rebut the presumption of at-will employment"), *aff'd*, 803 F. App'x 505 (2d Cir. 2020).

    To the extent the disparate facts referred to by Plaintiff may nevertheless be considered an effort to plead an implied contract, it is unavailing.  First, although he mentions his "senior" status, he neither alleges nor argues that that took his employment out of the presumptively at-will domain.  *See Harrison v. Indosuez*, 6 F. Supp. 2d 224, 231–32 (S.D.N.Y. 1998) ("While plaintiff may have believed that her agreement entitled her to a position until age 65, there is nothing contained in the agreement to indicate any term of definite duration."); *cf. Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 852 (2d Cir. 1985) (implied contract where employees "received repeated oral and written assurances from the employer that the Operations Manual," which expressly linked job reductions to seniority, "contained the terms and conditions of employment and was controlling").  The same is true of the existence of ordinary company policies (none of which are pled).  As the New York Court of Appeals has explained:  "Routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements . . . .  It would subject employers who have developed written policies to liability for breach . . . upon the mere allegation of reliance on a particular provision." *Lobosco v. N.Y. Tel. Co./NYNEX*, 751 N.E.2d 462, 465 (N.Y. 2001).  Next, the fact that Plaintiff was on medical leave did not guarantee him perpetual employment, as receiving "the benefits of . . . employment" does not "constitute a limitation on [D]efendant's right to discharge [Plaintiff] at will."  *Sabatowski v. Fisher Price Toys*, 763 F. Supp. 705, 712 (W.D.N.Y. 1991). Finally, even if Delta somehow breached one of its own policies by firing Plaintiff, "a failure by an employer to follow its internal policies cannot form the basis of a breach of contract claim,

unless, *inter alia*, mutual assent to enter into an implied-in-fact contract is shown." *Hunter*, 2011 WL 3555809, at *4. But as in *Hunter*, "Plaintiff has failed to identify what specific policies were mutually assented to by the Defendant . . . [and] which were then not followed by the Defendant." *Id.* Accordingly, Plaintiff's breach of contract claim is dismissed with prejudice.

### III.    Malicious Prosecution

"Under New York law, a malicious-prosecution claim requires a plaintiff to show (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *McCullough v. Graves*, No. 24-506, 2024 WL 4615821, at *3 (2d Cir. Oct. 30, 2024). "Because accusers must be allowed room for benign misjudgments, the New York Court of Appeals has held that the law places a heavy burden on malicious prosecution plaintiffs." *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). Delta argues that Plaintiff has failed to adequately plead the first and third elements of the cause of action. *See* Mot. at 15–16. I agree on both counts.

As it relates to the first element, commencement, "New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant." *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012). Thus, as a general matter

> a civilian defendant who merely furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable for malicious prosecution. The defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition.

*Saunders v. Cavada*, No. 19-cv-3279, 2024 WL 4284655, at *4 (E.D.N.Y. Sept. 25, 2024); *accord Shioya v. Hanah Country Inn Mgmt. Corp.*, 172 N.Y.S.3d 761, 767 (N.Y. App. Div.

2022).  Delta argues that Plaintiff fails to adequately plead the necessary affirmative inducement.

*See* Mot. at 15–16.[10]  Plaintiff's AC contains many allegations about Delta's intent and

participation in his prosecution.  *See, e.g.*, AC ¶ 39 ("Defendant and/or its agents deliberately and

maliciously initiated and materially assisted in the criminal prosecution . . . for the improper

purpose and/or objective of creating a scapegoat for Defendant's embarrassing and well-

publicized mishandling of the . . . transport . . . ."); *id.* ¶ 40 ("Defendant failed to take reasonable

steps to stop the prosecution of . . . Plaintiff and, instead, maliciously and deliberately provided

false and/or incomplete information . . . to induce prosecution . . . .").  However, I agree with

Delta that Plaintiff's claims are conclusory because of the absence of factual matter suggestive of

anything more than mere assistance to law enforcement, which is insufficient to trigger liability.

*See Delcine*, 2011 WL 666347, at *4.  And to the extent he alleges that Delta was motivated to

induce the prosecution to shift blame away from itself, without more, courts reject such claims as

speculative.  *See Gilman*, 868 F. Supp 2d at 128 ("Plaintiffs allege that Defendants 'encouraged,'

'convinced,' and 'colluded with' the Attorney General by 'offering up [the plaintiffs] as

targets . . . .  These conclusory allegations are not sufficient to state a plausible claim for relief

under . . . *Twombly* and *Iqbal*.").[11]  This defect alone dooms the malicious prosecution claim.

    Plaintiff also has a fundamental problem when it comes to the absence of probable cause,

the third element of his claim.  As the Second Circuit recently explained in *McCullough*,

---

[10]    Plaintiff barely engages with Delta's argument, merely falling back again on general
pleading rules.  *See* Opp. at 13–15.  For the reasons already explained, *see supra* at 12, more is
required.  Indeed, his own authority, *Delince v. City of New York*, No. 10-cv-4323, 2011 WL
666347, at *5 (S.D.N.Y. Feb. 7, 2011), makes clear that his allegations must still satisfy
*Twombly* and *Iqbal* to survive a motion to dismiss.

[11]    Similarly, notwithstanding the summary judgment posture in *Saunders*, the court there
rejected as conclusory the plaintiff's allegation that the defendants "initiated plaintiff's
prosecution in concert to avoid dealing with [a defendant's] 'manifest complicity'" in an illegal
scheme.  2024 WL 4284655, at *4.

"[u]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  2024 WL 4615821, at *3 (emphasis in original).  And like in that case, it is "undisputed" here that Plaintiff was indicted by a grand jury "on the charges underlying this claim."  *Id.*  Because "[t]he existence of probable cause is an absolute defense to a cause of action for malicious prosecution," Plaintiff's claim should fail.  *See Maron v. Cnty. of Albany*, 166 F. App'x 540, 541 (2d Cir. 2006).

Nevertheless, in Opposition, Plaintiff makes the point that "a party may still rebut the presumption" of probable cause created by the Indictment.  *See* Opp. at 14 (emphasis omitted). That is fair enough as an abstract matter, but he does not point to a single fact in the AC demonstrating the application of the principle.  *See id.* at 14–15; *see also* Reply at 9.  To be sure, Plaintiff says he was "an innocent man," AC ¶ 39, but that does not help him because he does not connect it to the probable cause inquiry, which asks whether the "facts and circumstances . . . would lead a reasonably prudent person to believe the plaintiff guilty," *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).[12]  Plaintiff also references his ultimate acquittal, *see* AC ¶ 42,

---

[12]    The same is true with respect to the following allegation tucked into a footnote in the AC: "Upon information and belief, Delta conducted their own internal investigation which concluded that [Plaintiff] was innocent of what he was being accused of.  Yet, upon information and belief, they [Delta] withheld the findings of this investigation to achieve their ostensible objective of having Plaintiff be the public scapegoat for their own negligence."  AC ¶ 20 n.3.  That does not render his claim plausible.  The Second Circuit has made clear that "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.  Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."  *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018).  "Nevertheless, even where facts are peculiarly within the possession and control of the defendant, the plaintiff must allege some factual basis for the allegations made upon information and belief," and Plaintiff has not even tried to do so here.  *See James v. Monroe Cnty.*, No. 20-cv-7094, 2022 WL 17155831, at *8 (N.D.N.Y. Nov. 22, 2022) (collecting cases).

but that is similarly irrelevant, *see Warren v. Byrne*, 699 F.2d 95, 98 (2d Cir. 1983) ("Malicious prosecution is based upon a defendant's alleged lack of probable cause to believe the plaintiff guilty of the crime for which he was prosecuted; and '[f]avorable termination has no bearing whatever in and of itself on want of probable cause . . . .'" (brackets retained) (quoting *Kezer v. Dwelle-Kaiser Co.*, 225 N.Y.S. 722, 729 (N.Y. App. Div. 1927)).

In addition, Plaintiff is insensitive to the particular context of this case, in which he was indicted by a grand jury. Thus, he is "required to rebut th[e] presumption by proving fraud, perjury, suppression of evidence or other misconduct *in the grand jury*." *Rothstein*, 373 F.3d at 283 (emphasis added). But like in *Rothstein*, "[h]is failure even to attempt to make that showing requires the dismissal of his claim." *Id.*; *accord Alvarez v. City of New York*, No. 22-cv-8689, 2024 WL 1140659, at *5 (S.D.N.Y. Mar. 15, 2024) (dismissing malicious prosecution claim based on the presumption of probable cause created by a grand jury indictment where the complaint, *inter alia*, "d[id] not address the grand jury proceeding at all"). In conclusion, Plaintiff fails to "rebut[] the presumption of probable cause that arises from the indictment." *McCullough*, 2024 WL 4615821, at *3. And his effort to do so by "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by [Delta] in bad faith" is unavailing. *Id.* (affirming grant of motion to dismiss a malicious prosecution claim). His malicious prosecution claim is therefore dismissed with prejudice.

### IV.    Abuse of Process

To state a claim for abuse of process under state law, "a plaintiff must allege that the defendant (1) employed regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Zappin v. Cooper*, No. 23-165, 2024 WL 3084015, at *2 (2d Cir. June 21, 2024). The third element, which forms the

"crux" of this claim, *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05-cv-6278, 2009 WL 804096, at \*16 (S.D.N.Y. Mar. 25, 2009), requires that "the defendants had an improper *purpose* in instigating the action," as opposed to merely "a malicious motive," *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (emphasis in original).[13]  Delta's sole, narrowly focused argument[14] is that Plaintiff has failed to plausibly plead this element.  *See* Mot. at 17.  I agree.

Here, Plaintiff alleges that Delta had the "the improper objective of creating a scapegoat for [its] embarrassing and well-publicized mishandling of the secure transport" and "failed to take reasonable steps to stop the prosecution . . . and, instead, maliciously and deliberately provided false and/or incomplete information . . . to induce the continued prosecution."  AC ¶¶ 46–47.  But even though he uses the word "objective," his allegations go to Delta's motive.  On this point, Delta rightly points to *Savino*, in which the Second Circuit found that the plaintiff's allegation that an investigation of him "was solely motivated to seek vindication for the [City's] great political embarrassment and humiliation for allowing plaintiff to be the highest paid [city] employee" went just to the defendants' motive and thus fell short of creating liability. 331 F.3d at 77–78 (brackets in original).  Similarly, the Second Circuit recently held that allegations, like those here, "suggest[ing] only that [the defendant] 'acted maliciously' in instigating the prosecution" were "insufficient" to state a claim.  *Zappin*, 2024 WL 3084015, at \*2.  In Opposition, Plaintiff repeats the familiar mantra that his allegations "are presumed to be

---

[13]    "The collateral objectives typically associated with abuse of criminal process are extortion, blackmail or retribution; and those objectives are usually characterized by personal animus."  *Richardson*, 2009 WL 804096, at \*16.

[14]    For this reason, the Court does not address other potential defects with this claim.  For example, it is not clear to the Court how Delta abused process, like the Indictment, after it was issued, a requirement of this cause of action.  *See, e.g.*, *Gilman v. Marsh & McLennan Cos.*, 654 F. App'x 16, 16–17 (2d Cir. 2016) ("To the extent [the plaintiffs] allege any 'abuse,' it unquestionably came *before* the process in question (their respective indictments), not after." (emphasis in original)).

true (not speculation)," but here, too, asserting that does not immunize the claim from pleading requirements.  *See* Mot. at 15.  I therefore join a long line of courts that have found "that allegations," like those advanced here, "that defendants pursued a prosecution in order to 'cover up' their own misconduct or protect other bad actors do[] not satisfy the collateral objective requirement."  *See LoPorto v. Cnty. of Rensselaer*, No. 15-cv-0866, 2018 WL 4565768, at *2, *15 (N.D.N.Y. Sept. 24, 2018) (collecting cases and rejecting this type of claim in which the plaintiff alleged that a defendant tried to "scapegoat" him); *see also Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (dismissing abuse of process claim for failure to plausibly plead a collateral objective where the plaintiff pled, *inter alia*, that the defendants were "covering up the fact that they did not want to treat her as a victim of domestic violence").

In any event, assuming *arguendo* that Plaintiff's "creating a scapegoat" motive is an actionable collateral objective, for the reasons already explained in the dismissal of the malicious prosecution claim, I would still agree with Delta that Plaintiff's assertion that this was in fact Delta's objective is too speculative to survive.  *Cf. Gilman*, 868 F. Supp. 2d at 133 ("This speculation about what Defendants communicated to the Attorney General behind closed doors is insufficient to state a plausible claim for abuse of process just as it was insufficient to state a plausible claim for malicious prosecution.").  The abuse of process claim is therefore dismissed with prejudice.

## V.    Leave to Amend

In the final sentence of his Opposition, Plaintiff seeks leave to amend:  "Plaintiff requests and should be afforded leave to amend to the extent the [C]ourt determines any of his claims are deficiently ple[d]."  Opp. at 16.  As an initial matter, that request does not entitle Plaintiff to leave to amend.  *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011) (finding no abuse of discretion where the "plaintiffs requested leave to amend without

specifying what additional facts, if any, they might assert in a new pleading"); *Singh v. Shikan*, No. 14-cv-5450, 2015 WL 4111344, at *1 (S.D.N.Y. June 25, 2015) (describing denial of leave to amend based on a "one[-]sentence, boilerplate request").  And although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," in this instance, the Court declines to grant Plaintiff further opportunity to further amend the AC.  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).  "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021).  Amendment is futile where the issues with the causes of action are "substantive."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

The Court finds that repleading any of the four causes of action would be futile.  With respect to the FMLA cause of action, "[c]laims barred by an applicable statute of limitations are futile."  *Jones v. City of New York*, 571 F. Supp. 3d 118, 126 (S.D.N.Y. 2021).  Further, on the merits, I see no way for Plaintiff to try to cure the defect with the interference claim, since the basis of Plaintiff's claim—that any disciplinary action against him while he was on leave violated the FMLA—is legally unsound.  *See Bos. Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, No. 23-940, 2024 WL 4023842, at *6 (2d Cir. Sept. 3, 2024) (leave to amend is futile where the plaintiff cannot "cure the legal defects in the claims").  Similarly, for his retaliation claim (assuming that is even a viable framing), Plaintiff will be unable to plead around the Indictment, and thus, also be unable to cure the fundamental causation problem with such a claim.  Plus,

given that Plaintiff did not even address the merits of a retaliation theory in his brief, he similarly identified "almost no facts" to support it, leaving me with "no reason to believe that giving Plaintiff another opportunity to amend would be anything other than futile." *See Williams v. Victoria's Secret*, No. 15-cv-4715, 2017 WL 1162908, at *11 (S.D.N.Y. Mar. 28, 2017).

In the same way, leave to amend the state law claims for breach of contract, malicious prosecution, and abuse of process would be futile. Here, the Court considers it important that the bases for dismissal of these claims identified in this Order were all previously and precisely identified by Delta in its pre-motion letter, *see* ECF No. 7, after which Plaintiff amended. Of course, the mere fact of amendment after seeing the pre-motion letter does not mean that Plaintiff "forfeit[ed] the opportunity to replead." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Nevertheless, this history informs (and ultimately helps to confirm) the Court's futility analysis given the simplicity and yet fundamental nature of the pleading defects that remain present in these three claims. *Cf. id.* at 191 (observing that in a "case combin[ing] a complex commercial reality with a long, multi-prong complaint[,] . . . . pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute").

For the breach of contract claim, Plaintiff has still not pled the existence of a contract, and despite his multifront effort to plead an implied contract, there remains no indication that he can overcome the "heavy burden . . . to take his employment relationship out of the 'at-will' realm." *Hunter*, 2011 WL 3555809, at *4 (denying leave to amend). He faces a similar "heavy burden," *Rothstein*, 373 F.3d at 282, with his malicious prosecution claim, for which there are two independently fatal flaws as to the elements of initiation/continuation and the absence of probable cause. Particularly with respect to the latter element, despite demonstrating a clear understanding in Opposition of the difficult task of rebutting the presumption of probable cause

created by the Indictment, Plaintiff neither identified nor even argued that there exist or may exist facts to support such a claim, instead asking the Court merely to "indulg[e] all available inferences of the absence of probable cause." Opp. at 15. But the Court can indulge inferences based only on facts, not legal assertions. And because the Indictment establishing probable cause will not disappear if he is given the opportunity to replead, Plaintiff appears to lack a viable path here, too. *See Lavrick v. Suffolk Cnty.*, No. 20-cv-609, 2021 WL 2856722, at *7 (E.D.N.Y. July 8, 2021) (denying leave to amend malicious prosecution claim after finding probable cause). I similarly see no basis for Plaintiff to properly plead the collateral objective needed for his abuse of process claim, especially given his failure to address this issue in Opposition and the AC's exclusive focus on Delta's motive. *See Zappin*, 2024 WL 3084015, at *3 (affirming denial of leave to amend abuse of process claim on futility grounds where the plaintiff "fail[ed] to adequately plead anything more than an improper motive"). Thus, leave to amend is denied.

## CONCLUSION

For the foregoing reasons, the AC is dismissed with prejudice and without leave to amend. The Clerk of Court is respectfully directed to enter judgment and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
         December 6, 2024